IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SIDEM, S.A. and ENTROPIE S.A.S.,**<br>    Plaintiffs,<br><br>        v.<br><br>**AQUATECH INTERNATIONAL CORPORATION and CHALRES DESPORTES,**<br>    Defendants. | CIVIL ACTION NO.    10-81 |

# MEMORANDUM OPINION

CONTI, District Judge.

On May 10, 2010, this court heard oral argument on two motions to dismiss filed by defendants Aquatech International Corp. ("Aquatech") and Charles Desportes ("Desportes," and together with Aquatech, "defendants"). The motions to dismiss are directed at the amended complaint (Docket No. 18) filed by plaintiffs Sidem, S.A. ("Sidem") and Entropie S.A.S. ("Entropie," and together with Sidem, "plaintiffs"). The first motion to dismiss was filed on March 26, 2010 pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction (Docket No. 26). The second motion to dismiss was filed on March 27, 2010 pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (Docket No. 28).

At the May 10, 2010 hearing, the court requested that the parties submit supplemental briefing addressing several issues. Among those issues was whether the alleged statements made by defendants misrepresented the nature, characteristics, qualities, or geographic origin of

Aquatech's goods, services, or commercial activities as is necessary to establish plaintiffs' false advertising claim under § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), asserted in count I of the amended complaint. On May 28, 2010, plaintiffs filed a supplemental brief (Docket No. 43) and defendants also filed a supplemental brief (Docket No. 44). On June 17, 2010, the court heard oral argument and made various rulings on the record with respect to the issues presented in the supplemental briefing. This opinion addresses the court's ruling with respect to defendants' motion to dismiss the claim plaintiffs assert pursuant to the Lanham Act.

## *Background*[1]

Sidem designs and builds large Multi-Effect Desalination ("MED") units for use in the water treatment industry. (Am. Compl. (Docket No. 18) ¶ 7.) Entropie became a wholly-owned subsidiary of Sidem in 2005. (Id. ¶¶ 2, 22.) Over a ten-year time span, Sidem successfully developed large-scale MED units with the capacity to treat an amount of water that previously was impossible for MED units to handle. (Id. ¶¶ 11-17.)

Desportes was an Entropie employee from 1984 until August 2007, eventually holding the position of Technical Director. (Id. ¶ 21.) After Entropie became a subsidiary of Sidem, Desportes had access to Sidem trade secret information related to the large MED units. (Id. ¶¶ 23-24.) In September 2007, Aquatech hired Desportes as Director of Thermal Desalinization. (Id. ¶ 27.) Within six months, Aquatech submitted a bid for a project that required the construction of a large-scale MED unit. (Id. at ¶ 30.) No company other than Sidem previously constructed a unit with as large of a capacity as the one proposed by Aquatech in the bid. (Id. ¶¶

---

[1] The factual background is a summary of the factual allegations in plaintiff's complaint which must be accepted as true for purposes of ruling on a motion to dismiss. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) ("When considering a Rule 12(b)(6) motion, we are required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the

16-17.) Plaintiffs allege that, without access to Sidem's trade secret information, Aquatech would not have been able to handle such a project. (Id. ¶¶ 31-44.)

Plaintiffs allege that Aquatech and Desportes falsely represented to the consumer public that Aquatech had expertise and experience in designing and constructing large MED units, (id. ¶ 46), that Aquatech independently developed and designed large MED units, (id. ¶ 47), and that increasing the size of an MED unit "is easy and does not require specialized knowledge" (id. ¶ 48).

In count I of plaintiffs' amended complaint, plaintiffs assert that, in advertisements used in United States commerce, Aquatech made "false and misleading representations of fact regarding Aquatech's skill and experience in designing Large MED Units proscribed under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)." (Id. ¶¶ 71, 72.) Plaintiffs also assert that "Aquatech's attempts to pass off Sidem's Trade Secret Information as Aquatech's own design and experience violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)." (Id. at 73.)

### Standard of Review

A motion to dismiss tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits. Rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") motion to dismiss, a complaint must

---

plaintiff.").

provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.. . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949) (quoting Twombly, 550 U.S. at 556) (internal citations omitted).

Two working principles underlie Twombly. Id. First, with respect to mere conclusory statements, a court need not accept as true all of the allegations contained in a complaint. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555.) Second, to survive a motion to dismiss, a claim must state a plausible claim for relief. Id. at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (citing 490 F.3d at 157-58). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n] – that the pleader is entitled to relief.'" Id. (quoting FED. R. CIV. P. 8(a)(2)). A court considering a motion to dismiss may begin by identifying pleadings that are not entitled to the assumption of

4

truth because they are mere conclusions.

> While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id.

Generally, courts are to notify plaintiffs that they have leave to amend their complaints unless the amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (reversing district court for failing to grant plaintiff right to amend when the district court did not specifically find that granting leave to amend would be inequitable or futile). Allowing for amendment is consistent with Rule 15(a) of the Federal Rules of Civil Procedure, which provides "leave [to amend] shall be freely given when justice so requires." A court, however, may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility. In re Burlington Coat Factory Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). The standard of legal sufficiency set forth in Federal Rule of Civil Procedure 12(b)(6) determines whether a proposed amendment would be futile. In re Burlington Coat Factory Litig., 114 F.3d at 1434. An amendment is futile where the complaint, as amended, would fail to state a claim upon which relief could be granted. Id.

*Discussion*

Section 43(a) of the Lanham provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). In <u>Dastar v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23 (2003), the Supreme Court observed that the courts of appeals unanimously hold that § 43(a)(1)(A), to the extent it protects against misrepresentations related to the "origin" of goods or services, includes protection against "reverse passing off." <u>Dastar</u>, 539 U.S. at 29. Reverse passing off occurs when a producer of a good or provider of a service "misrepresents that someone else's goods or services are his own." <u>Id.</u> at 29 n.1. The Supreme Court decided in <u>Dastar</u>, however, that a reverse passing off claim is not actionable under § 43(a)(1)(A) if the misrepresentation regarding the origin of goods or services relates to their origination, development, or creation. The principal concern underlying the Supreme Court's holding was a conflict with copyright law. <u>Id.</u> at 34. The Court stated:

> Assuming for the sake of argument that Dastar's representation of itself as the "Producer" of its videos amounted to a representation that it originated the creative work conveyed by the videos, allowing a cause of action under § 43(a) for that representation would create a species of mutant copyright law that limits the public's "federal right to 'copy and to use' " expired copyrights, [<u>Bonito Boats, Inc. v. Thunder Craft Boats, Inc.</u>, 489 U.S. 141, 165 (1989)].

<u>Id.</u>

The Supreme Court additionally explained:

6

> [U]nder respondents' theory, the "origin of goods" provision of § 43(a) would have supported the suit that we rejected in Bonito Boats . . . where the defendants had used molds to duplicate the plaintiff's unpatented boat hulls (apparently without crediting the plaintiff). And it would have supported the suit we rejected in [TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23 (2001)]: The plaintiff, whose patents on flexible road signs had expired, and who could not prevail on a trade-dress claim under § 43(a) because the features of the signs were functional, would have had a reverse-passing-off claim for unattributed copying of his design.
>
> In sum, reading the phrase "origin of goods" in the Lanham Act in accordance with the Act's common-law foundations (which were not designed to protect originality or creativity), and in light of the copyright and patent laws (which were ), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods. Cf. 17 U.S.C. § 202 (distinguishing between a copyrighted work and "any material object in which the work is embodied"). To hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do. See [Eldred v. Ashcroft, 537 U.S. 186, 208 (2003)].

Id. at 37.

Defendants moved to dismiss count I of the amended complaint, arguing that Dastar precludes plaintiffs' Lanham Act claim. In opposing the motion to dismiss, plaintiffs argue that the Dastar decision only involved § 43(a)(1)(A) and not § 43(a)(1)(B). Section 43(a)(1)(B) protects against misrepresentations about "the nature, characteristics, [or] qualities . . . [of] goods, services, or commercial activities" in commercial advertising or promotion. 15 U.S.C. § 1125(a)(1)(B). Plaintiffs emphasize that in Dastar the Supreme Court stated:

> If, moreover, the producer of a video that substantially copied the Crusade series were, in advertising or promotion, to give purchasers the impression that the video was quite different from that series, then one or more of the respondents might have a cause of action–not for reverse passing off under the "confusion . . . as to the origin" provision of § 43(a)(1)(A), but for misrepresentation under the "misrepresents the nature, characteristics [or] qualities"

> provision of § 43(a)(1)(B). For merely saying it is the producer of
> the video, however, no Lanham Act liability attaches to Dastar.

Dastar, 539 U.S. at 38; see Zyla v. Wadsworth, 360 F.3d 243, 252 n.8 (1st Cir. 2004) ("The Court in Dastar left open the possibility that some false authorship claims could be vindicated under the auspices of § 43(a)(1)(B)'s prohibition of false advertising."); Clauson v. Eslinger, 455 F. Supp. 2d 256 (S.D.N.Y. 2006); Cathedral Art Metal Co. v. F.A.F., Inc., No. 05-315S, 2006 WL 2583584, at **2-3 (D.R.I. Sept. 6, 2006).

Although the Dastar decision only involved § 43(a)(1)(A) and not § 43(a)(1)(B), a number of courts apply the Supreme Court's reasoning in Dastar to prohibit claims under § 43(a)(1)(B) if the advertisement or promotional material allegedly misrepresents that the defendant originated, developed, or created the goods or services.

In Baden Sports, Inc. v. Molten USA, Inc., 556 F.3d 1300 (Fed. Cir. 2009), the defendant allegedly copied the patented cushioning technology that the plaintiff used for producing game-quality basketballs. In advertisements, the defendant stated the technology was "proprietary," "exclusive," and "innovative." Id. at 1303. The plaintiff sued for patent infringement and Lanham Act false advertising under § 43(a)(1)(B). The defendant moved for summary judgment on the Lanham Act claim, and the trial court granted summary judgment with respect to the advertisements stating the technology was "proprietary" and "exclusive," holding that those advertisements under Dastar were not violations of § 43(a)(1)(B). The trial court denied summary judgment with respect to the advertisement stating the technology was "innovative," because the trial court considered this to relate to the nature, characteristics, and qualities of the basketballs. Id.

The case went to trial, and the jury returned a verdict in the plaintiff's favor on both the Lanham Act claim and patent claim, awarding damages in excess of $8 million with respect to

the Lanham Act claim and slightly over $38,000 with respect to the patent claim. Id. at 1304. The defendant appealed, and the court of appeals, applying the case law of the Court of Appeals for the Ninth Circuit as pronounced in Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137 (9th Cir. 2008), reversed the trial court's denial of judgment as a matter of law with respect to the Lanham Act claim. Id. at 1305-08. The court of appeals stated:

> While the dictum in Dastar might suggest that the Supreme Court left open the possibility of a claim arising from a misrepresentation concerning the qualities of certain goods, it does not necessarily suggest that claims based on false designation of authorship are actionable under Section 43(a)(1)(B). Such a holding could create overlap between the Lanham and Patent Acts.

Id. at 1307. The court determined that the alleged misrepresentations all related to false authorship:

> [W]e must determine whether [the plaintiff] has alleged anything more than false designation of authorship. We conclude that [the plaintiff] has not. No physical or functional attributes of the basketballs are implied by [the defendant]'s advertisements. "Innovative" only indicates, at most, that its manufacturer created something new, or that the product is new, irrespective of who created it. In essence, [the plaintiff]'s arguments in this case amount to an attempt to avoid the holding in Dastar by framing a claim based on false attribution of authorship as a misrepresentation of the nature, characteristics, and qualities of a good.

Id.

In Robert Bosch, LLC v. Pylon Manufacturing Corp., 632 F. Supp. 2d 362 (D. Del. 2009), the plaintiff argued that statements on the defendant's website misled the public into believing that the defendant's products were new and novel, and were developed by the defendant and not by the plaintiff. In particular, the defendant's website stated: "[The defendant]'s expertise . . . has inspired the development of a high performance, frameless all-weather wiper blade with many innovative features and benefits, including . . . Advanced

9

Frameless Design . . . and Integrated High-Downforce Spoiler," and "[t]he latest [of the defendant's] wiper blades on the market are all new and improved . . . adding functional features such as spoilers for improved wiper performance." Id. at 365. The plaintiff sued, asserting a claim pursuant to § 43(a)(1)(B). Id. at 364. The court recognized that the "Plaintiff's first claim for false advertising boils down to defendant's advertisement that it **developed** a 'frameless all-weather wiper blade' and, by implication, [the plaintiff] did not develop the said frameless wiper blade." Id. at 366. The court stated "[t]his court, and other courts, have found that 'false attribution of the authorship' of an invention or innovation is not an actionable false advertisement under § 43(a) of the Lanham Act." Id.[2]

In Invista S.a.r.l. v. E.I. Du Pont De Nemours, No. 08 Cv. 7270, 2008 WL 4865208, at *1 (S.D.N.Y. Nov. 3, 2008), the plaintiff and the defendant were part of a joint venture. As part of the venture, a certain chemical technology was shared subject to a confidentiality restriction. The defendant wanted to build a plant for manufacturing a product, and the production process would utilize the chemical technology. The plaintiff claimed that the defendant advertised falsely in violation of § 43(a) of the Lanham Act because the defendant "met with and made

---

[2] The plaintiff filed a motion for reconsideration. Bosch, No. 08-542, 2009 WL 3366967, at **1-2 (D. Del. Oct. 19, 2009). In the motion for reconsideration, the plaintiff cited Proctor & Gamble Co. v. Haugen, 222 F.3d 1262, 1270 (10th Cir. 2000). Plaintiffs in this case also cited the Proctor & Gamble decision.
  In Proctor & Gamble, the defendants disseminated a rumor that the plaintiff's president was associated with the church of satan and profits from the sale of the plaintiff's products supported that church. The plaintiff brought a Lanham Act claim under § 43(a)(1)(B). The district court granted the defendants' motion for summary judgment because it "found the subject message, although 'identif[ying] . . . [the plaintiffs'] products,' did not 'contain false representations about the *qualities or characteristics* of those products,' and so did 'not relate to a product within the meaning of the Lanham Act.'" Id. at 1270. The court of appeals agreed, stating that "the subject message did not implicate the nature, characteristics, or qualities of [the plaintiff]'s products because it impugned no feature of the products themselves, such as price, regulatory approval, scope of copyright, or substitutability for another product." Id. (citations omitted). The court of appeals nevertheless reversed, arguing that summary judgment was not proper because the alleged statements by defendants related to the plaintiff's "commercial activities." Id. at 1271-73. The court of appeals broadly defined the term, observing that "commercial activities" would encompass all activities surrounding the "commerce" of a company, and turned to the definition of "commerce" in Webster's Third New International Dictionary as "the exchange or buying and selling of commodities." Id. at 1272-73.
  Despite the plaintiff's reliance upon Proctor & Gamble, the court in Bosch upheld its previous decision. Bosch, 2009 WL 3366967, at **1-2.

10

statements to a number of [current and potential customers of the plaintiff] that it has freedom to use the [chemical technology] to build and operate a new . . . plant in Asia and that it is a co-holder of the technology." Id. at *1.

The court noted that the plaintiff alleged a violation of § 43(a)(1)(B), and the plaintiff asserted that the defendant's

> representations that it has the right to use the [chemical] technology to build and operate a new . . . plant in Asia are "literally false and misleading and are designed to confuse and deceive" because "[the defendant] does not own rights to the [chemical technology], but instead has misappropriated and stolen this technology from [the joint venture]." . . . In essence, [the plaintiff] alleges that [the defendant] misrepresents its ownership of the [chemical technology].

Id. at *3. The court explained that Dastar bars any claims with respect to the origination, development, or creation of an idea:

> While [the defendant]'s alleged statements were made in connection with the "goods" [that are ultimately produced based upon the chemical technology], its alleged misrepresentations relate to the . . . technological process, rather than any "goods or services" within the meaning of Section 43(a).
>
> Defendants contend that this claim amounts to a repackaged false designation of origin claim arising under Section 43(a)(1)(A). While that section covers claims of misrepresentations about the origin of products sold in the marketplace, it does not protect "the person or entity that originated the ideas or communications that 'goods' embody or contain." Dastar, 539 U.S. at 32. Section 43(a)(1)(A) protects "the producer of the tangible goods that are offered for sale," rather than "the author of any idea, concept or communication embodied in those goods." Id. at 37.

Id. The court held that the plaintiff's claims were barred by Dastar, since "[n]one of [the plaintiff]'s allegations relate to the 'nature, characteristics [or] qualities' of [the defendant]'s" product that was made based upon the chemical technology or the process by which it manufactured that product. Id. "These allegations reduce to [the defendant]'s alleged passing

off of [the plaintiff]'s work–its [chemical technology]–as [the defendant]'s own." Id.

In Smartix International Corp. v. Mastercard International LLC, No. 06 CV 5174, 2008 WL 4444554, at **5-7 (S.D.N.Y. Sept. 30, 2008), the plaintiff, who had developed electronic sports marketing programs, alleged that a former vice president stole confidential information related to those programs from the computer server. The vice president gave those materials to the defendants, who replicated the programs. The plaintiff alleged that the defendants misrepresented that the program was their own, in violation of § 43(a)(1)(B). Id. at *6. The court held that the plaintiff's "attempt to re-characterize this cause of action as a misrepresentation claim, as oppose to a reverse palming off claim, is to no avail." Id. The court reasoned that the "alleged lack of [attribution], as to the originating source of the technology underlying defendants' affinity card programs, is not a misrepresentation as to the inherent 'nature, characteristics [or] quality' of the programs themselves." Id.

In Antidote International Films, Inc. v. Bloomsbury Publishing, PLC, 467 F. Supp. 2d 394 (S.D.N.Y. 2006), the defendant wrote a novel under the name "J.T. Leroy." The defendant in press releases and public statements claimed that the book was based upon J.T. Leroy's own personal history. Id. at 396-97. The plaintiff, a film production company, was "swallowed whole and reeled in" by "the authenticity of" the story and decided to purchase the film rights to the story from the defendant for $15,000. Id. at 397. Eventually it was learned that J.T. Leroy did not exist. The plaintiff sued under § 43(a)(1)(A), and the court found that the this claim was foreclosed by Dastar. Id. at 398. The plaintiff tried to distinguish Dastar, arguing that his claim was brought against the author of the work, not the producer/publisher, and thus the claim related to the "origin" of the work. The court rejected this argument. Id. The plaintiff also brought a claim under § 43(a)(1)(B), challenging as false advertising the representations that: (1) J.T. Leroy

exists, (2) the novel was authored by J.T. Leroy, and (3) the novel was based on the personal, real-life experiences of its author. The court held that this claim was likewise barred by Dastar. The court stated that "[i]f authorship were a 'characteristic[ ]' or 'qualit[y]' of a work, then the very claim Dastar rejected under § 43(a)(1)(A) would have been available under § 43(a)(1)(B)." Id. at 400.

Plaintiffs argue this case is distinguishable from the above decisions, because all those decisions concerned "goods," whereas this case concerns "services" or "commercial activities." The court disagrees with plaintiffs' characterization of the case. The misrepresentations alleged in plaintiffs' complaint, when viewed objectively, relate to the large-scale MED units produced by Aquatech. Furthermore, the court does not believe that the distinction raised by plaintiffs is of any import to the analysis. The Supreme Court's concern in Dastar was the potential conflict with copyright or patent law. Plaintiffs' claim under § 43(a)(1)(B), regardless of its characterization as one involving goods, services, or commercial activities, implicates that same concern highlighted by the Supreme Court.

Plaintiffs point to their allegation that defendants misrepresented that increasing the size of an MED unit "is easy and does not require specialized knowledge," (Am. Compl. ¶ 48), and argue that this relates to the nature, characteristics, and qualities of the units. Plaintiffs argue that there is no conflict between patent law and their Lanham Act claim, at least to the extent the Lanham Act claim is based upon the allegation that defendants falsely represented that Aquatech had experience in designing and constructing large-scale MED units. (Am. Compl. ¶ 46.) The gist of plaintiffs' allegations, however, concerns the development and creation of the MED units and the passing off of plaintiffs' design and experience as Aquatech's work. In Bosch the plaintiff alleged that the defendant misrepresented, inter alia, that the wiper blades were "all new

13

and improved," Bosch, 632 F. Supp. 2d at 365, and in Antidote the plaintiff alleged that the defendant misrepresented, inter alia, that the novel was based upon J.T. Leroy's personal experiences, Antidote, 467 F. Supp. 2d at 400. The courts in both of those decisions did not deal with these misrepresentations separately from those that were more specifically directed at the origin, development, and creation of the products. In Baden, the trial court deemed the alleged misrepresentation with respect to the "innovative" cushioning technology as a misrepresentation about the nature, characteristics, or qualities of the product, but the court of appeals disagreed, treating it no different than the other misrepresentations that were barred by Dastar. Baden, 556 F.3d at 1305-08.

Following the logic of the above-cited decisions, this court concludes that it would be inappropriate to ignore the main thrust of plaintiffs' allegations that Aquatech passed off Sidem's trade secret information as its own, i.e. that Aquatech – not plaintiffs – originally developed or created the design and construction of large MED units, and under those circumstances Dastar bars plaintiff's Lanham Act claim asserted under § 43(a)(1)(B). Defendants' motion to dismiss is granted to the extent defendants moved to dismiss count I of the amended complaint. For the reasons set forth on the record at the June 17, 2010 hearing and in light of plaintiffs' decision to amend the complaint to remove Desportes as a defendant in order for this court to exercise diversity jurisdiction over this case, the motions to dismiss are denied in all other respects. Notwithstanding the proposed amendment, plaintiffs' objection to this ruling is preserved.

Dated: June 23, 2010                          BY THE COURT:

                                                          /s/ Joy Flowers Conti
                                                       Joy Flowers Conti
                                                       United States District Judge